IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| LAURA ANN JOSS, individually and as Personal Representative of the ESTATE OF JOHN W. JOSS, J.R., deceased, and as natural guardian and next friend of JACKSON C. JOSS, a minor, | CV-08-68-BLG-RFC-CSO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE AND ORDER** |
| STACY PERINE BARBER and ANGIE PERINE, individually and as Personal Representatives of the Estate of HUBERT DON PERINE, deceased, | |
| Intervening Plaintiffs, | |
| vs. | |
| BRIDGESTONE CORPORATION, a Japanese corporation; BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC, as successor to BRIDGESTONE/FIRESTONE, INC., a foreign corporation; and FORD MOTOR COMPANY, a foreign corporation, | |
| Defendants. | |

-1-

Plaintiff Laura Ann Joss ("Joss") brought this wrongful death and survival action against the Defendants, alleging strict product liability and breach of warranty.  Pending before the Court is Defendant Bridgestone Corporation's ("Bridgestone's") Motion to Dismiss for Lack of Personal Jurisdiction *(Court's Doc. No. 27)*.  Joss and intervening plaintiffs Stacy Perine Barber and Angie Perine ("Barber") (collectively "plaintiffs") resist the motion.  Joss also moves to strike portions of the affidavit of Bridgestone employee Yuichi Hashiguchi ("Hashiguchi") (*Court's Doc. No. 33*).  For reasons stated below, the Court will deny Joss's motion to strike, and recommend denying Bridgestone's motion to dismiss.[1]

## I.      BACKGROUND

### A.      The Accident

For purposes of the motion to dismiss, the Court accepts the following factual allegations of the Complaint and the Complaint In Intervention as true. On July 7, 2007, Joss's husband, John W. Joss, Jr., was driving a 2002 Ford F-350 crew cab diesel pick-up truck ("Ford truck") eastbound on U.S. 212 in Powder River County, Montana.  *Complaint (Court's Doc. No. 1), ¶¶ 14, 18.*

---

[1]Chief Judge Cebull has referred this case to the undersigned for all pretrial purposes pursuant to 28 U.S.C. § 636(b), including submission of proposed findings and recommendations. *Court's Doc. No. 44.*

-2-

Joss was a passenger in the middle front seat, and the couple's minor son, Jackson

Joss, was a passenger in the middle rear seat. *Id., ¶ 15.* Barber's father, Hubert

Don Perine, was a front seat passenger in the Ford truck. *Complaint in*

*Intervention (Court's Doc. No. 19), ¶ 12.* The Ford truck was equipped with

Bridgestone Dueler M/T steel-belted radial tires ("Bridgestone tires") designed,

developed, tested, manufactured and/or distributed by Bridgestone and Firestone.

*Complaint, ¶ 17.* The right front Bridgestone tire catastrophically failed and John

W. Joss Jr. lost control of the Ford truck. *Id, ¶ 18.* The Ford truck left the road

and rolled. *Id., ¶ 21.* The Ford truck's roof crushed inward, killing John W.

Ross, Jr., and Hubert Don Perine. *Id.; Complaint in Intervention, ¶ 18.*

   None of the plaintiffs or injured parties are citizens or residents of

Montana.

   **B.    Jurisdictional Facts**

   It is undisputed that Bridgestone is a Japanese corporation, and is the

parent corporation of defendant Bridgestone/Firestone North American Tire, LLC

("Firestone"), an Ohio Corporation with its principal offices in Nashville,

Tennessee. *Complaint, ¶¶ 6-7.* Additionally, Joss alleges that Bridgestone

supplies tires to retail outlets in Montana directly and/or indirectly through its

agent, Firestone. *Id., ¶ 7.* Joss alleges this Court has personal jurisdiction

because:

> Defendants transact business in this state, have
> committed acts that resulted in the accrual of a tort within
> this state, insure risks located in this state, and enter into
> contracts to be performed in this state.  Exercise of
> personal jurisdiction pursuant to Montana's long arm
> statute is consistent with due process because Defendants
> have purposefully availed themselves of the privilege of
> doing business in the forum including by selling ... tires
> in Montana and engaging in direct advertising and
> marketing in Montana and through the internet."

*Id., ¶¶ 10-11; see also Complaint in Intervention, ¶¶ 7-8.*

Bridgestone disputes Joss's personal jurisdiction allegations through the

affidavit of an employee, Yuichi Hashiguchi.  *Court's Doc. No. 28, Ex. A*

*("Hashiguchi Aff.").*  According to Hashiguchi, "Bridgestone designs,

manufactures, and sells tires only in Japan through transactions that are governed

by Japanese law."  *Hashiguchi Aff., ¶ 4.*  Any tires manufactured by Bridgestone

that are sold in Montana or the United States are purchased from Bridgestone in

Japan.  *Id., ¶ 5.*  "Bridgestone manufactured tires are then sold by Firestone and

other third parties in the United States.  Bridgestone exercises in principle no

control over where and to whom such tires are sold."  *Id.*  It is unclear what

Hashiguchi means by using the qualifier "in principle".  But Hashiguchi, relying

on the Complaint's description of the tire, does admit that Bridgestone

manufactured and sold the subject tire in Japan.  *Id., ¶ 8.*  He also avers that

"Bridgestone had no involvement in the subsequent sale or redistribution of the tire in the United States." *Id.*

Hashiguchi specifically denies that Bridgestone has contacts with Montana. Bridgestone is not licensed to do business in Montana, does not have a registered agent for service of process in Montana, and has not authorized anyone to act as its agent for service of process in Montana. *Id., ¶ 9.* Bridgestone does not do business in Montana, nor has it ever done so. *Id., ¶ 10.* Bridgestone has not designed, manufactured, sold, delivered, or issued warranties on any good or product in Montana, nor has it participated in the decision to sell or deliver any good or product to Montana. *Id.* Bridgestone has not conducted a recall or replacement program of any kind in Montana. *Id.* Finally, Bridgestone and Firestone are separate corporations, and Bridgestone does not conduct business in Montana through Firestone. *Id., ¶ 13.*

Joss and Barber argue that Bridgestone knows, and intends, that its tires are widely distributed and sold in the United States, including in Montana. Bridgestone's 1999 annual report states that it is "becoming an industry leader in the Americas," and is North America's second largest tire supplier, with a 20 percent market share. *Court's Doc. No. 31, Ex. 12 at 4-5.* The annual reports further describe Bridgestone's "goal of being No. 1 or at least a strong No. 2 in

-5-

every large market." *Court's Doc. No. 31, Ex. 12 at 5.*  It also notes, "Continuing

gains in productivity have strengthened our competitive position greatly in the

Americas."  *Id.*  The 1999 report describes Bridgestone's North American

passenger tire business: "In the replacement market, we promote our tires through

diverse channels, including 1,550 company-owned stores, our Family Channel

network of some 13,000 independent dealers, and supply arrangements with

national mass merchandisers.  In original equipment tires, our North American

business includes close working relationships with the leading automakers[.]" *Id.*

*at 4.*

The 1998 annual report states that "sales growth in North America

outpaced even the strong growth in North American demand.  It reflects the

success of our multibrand strategy." *Court's Doc. No. 31, Ex. 10 at 8.*  This

report also cites sales of $7.5 billion in the Americas, amounting to 43.8 percent

of Bridgestone's consolidated net sales and 31.1 percent of its total operating

profit.  *Id.*  In fact the Americas were "our biggest source of consolidated sales."

*Id.*

Joss also provides photocopies of yellow pages advertisements from

several of Montana's larger communities.  These advertisements reflect that

Bridgestone tires are widely available, advertised and promoted in Montana.

-6-

*Court's Doc. No. 31, Ex. 1-6.*

## II.    PARTIES' ARGUMENTS

### A.    Motion to Dismiss

Bridgestone argues, first, that Montana's long-arm statute does not confer personal jurisdiction over it.  General personal jurisdiction does not exist because Bridgestone is not "found" in Montana and conducts no business in Montana. *Defendant Bridgestone Corporation's MTD (Court's Doc. No. 28) at 5-6.* Bridgestone also argues that the provisions of Montana's long-arm statute providing specific personal jurisdiction are not applicable because: (a) Bridgestone does not engage in the transaction of business in Montana; (b) Bridgestone's allegedly tortious acts would have occurred in Japan; and, (c) Bridgestone has not contracted to insure a risk in Montana or entered into a contract for services to be rendered or materials to be furnished in Montana.  *Id. at 6-8.*

Second, Bridgestone argues that the exercise of personal jurisdiction over it in Montana would violate due process.  Specific jurisdiction does not exist because Bridgestone's acts of manufacturing and selling the tire in Japan do not constitute purposeful availment of the laws and protections of Montana, nor could Bridgestone reasonably anticipate being haled into Montana court.  *Id. at 9-11.*

-7-

Finally, Bridgestone has not forum related activities, thus the plaintiffs' claims did not arise from such activities. *Id. at 13.*

Bridgestone concludes that general personal jurisdiction does not exist, and that Firestone's contacts with Montana may not be imputed to Bridgestone. *Id. at 14-17.*

Joss responds that Bridgestone has sufficient contacts with Montana to permit exercise of personal jurisdiction. First, specific jurisdiction exists under the long-arm statute because Bridgestone manufactured the defective tire, and the tort accrued in Montana where the injury occurred. *Pl's Response to Defendant Bridgestone Corporation's MTD (Court's Doc. No. 31) at 9-10.* Federal due process is satisfied because Bridgestone places its tires in the stream of commerce and directs its activities toward obtaining the benefit of sales in the United States, including Montana. *Id. at 10-12,*

Second, Joss argues that Bridgestone exercises such control over its subsidiary, Firestone, that Firestone's contacts should be imputed to Bridgestone under the single business enterprise theory. Joss argues that Bridgestone oversees Firestone's operations, monitors its productivity, provides Firestone with officers, provides Firestone with tires and technology and takes responsibility for problems with those tires. *Id. at 12-13.*

-8-

Third, Joss argues that Bridgestone should be collaterally estopped from litigating the issue of personal jurisdiction in the United States because many courts have previously determined that personal jurisdiction over Bridgestone exists.  Joss cites numerous findings by courts that Bridgestone and Firestone are not operated as separate business entities.  *Id. at 14-18.*

Finally, Joss argues that dismissal on jurisdictional grounds would be improper until the plaintiffs have had an opportunity to conduct discovery on that issue.  *Id. at 18-20.*

Barber responds, similar to Joss, that Bridgestone's own contacts with Montana are sufficiently extensive to confer personal jurisdiction, that Firestone's contacts with Montana should be imputed to Bridgestone, and that, alternatively a stay of the motion to allow plaintiffs discovery on jurisdiction should be granted. *Intervenors' Opposition to Defendant Bridgestone Corporation's MTD (Court's Doc. No. 30).*

Additionally Barber argues that transfer of title to the tires from Bridgestone to Firestone in Japan does not insulate Bridgestone from personal jurisdiction.  *Id. at 5-6.*  Also, Bridgestone has extensive facilities in the United States, and delivered thousands of tires to Montana in connection with a recall. *Id. at 6-8.*

Bridgestone replies separately to Joss and Barber.  To Joss, Bridgestone replies that, under Montana's long-arm statute, both the injury-causing event and the injury itself must occur in Montana.  *Defendant Bridgestone Corporation's Reply (Court's Doc. No. 37) at 2-3.*  Bridgestone also argues that personal jurisdiction under an agency or alter ego theory cannot be based on informal language used by a corporation in its annual report and other public statements. *Id. at 5.*  Bridgestone states that the "single business enterprise" theory, under which Joss would impute Firestone's contacts to Bridgestone, has not been adopted in Montana, and the case Joss relies on was recently vacated.  *Id. at 7.* Finally, Bridgestone argues that collateral estoppel is inapplicable because the question has not been litigated in Montana.  *Id. at 8-10.*

In its separate reply to the Intervenors, Bridgestone adds that plaintiffs' cases are outdated or inapposite.  *Defendant Bridgestone Corporation's Reply to Intervenors (Court's Doc. No. 39).*  Bridgestone attaches to both replies copies of multiple court rulings finding no personal jurisdiction over Bridgestone.

## B.    Motion to Strike

Joss moves to strike portions of Yuichi Hashiguchi's affidavit submitted by Bridgestone.  Joss argues that paragraph 10 of Hashiguchi's affidavit is improperly authenticated because it is based on "best knowledge" rather than

personal knowledge.  *Plaintiffs' Objection and Motion to Strike Portions of Declaration of Yuichi Hashiguchi (Court's Doc. No. 33) at 2.*  Also, paragraph 11contains improper legal conclusions.  *Id.*  Finally, many factual statements in the affidavit are disputed, specifically those in paragraphs 4, 5, and 13-16, and the disputes must be resolved in Plaintiffs' favor.  *Id. at 3-4.*  Joss also notes that Hashiguchi's affidavit omits the claim that Bridgestone does not market tires in the United States, a statement present in earlier Bridgestone affidavits.  *Id. at 4.*

Bridgestone responds that, in the second paragraph, Hashiguchi states that the affidavit is based on personal knowledge.  *Defendant Bridgestone Corporation's Response to Plaintiffs' Objection and Motion to Strike (Court's Doc. No. 38) at 2.*  Bridgestone also argues that paragraph 11 is a factual assertion, not a legal conclusion.  *Id. at 3-4.*  Finally, Bridgestone argues that the Plaintiffs have not countered Hashiguchi's affidavit with evidence, and present only conclusory allegations in support of personal jurisdiction.  *Id. at 5.*

Joss replies that Hashiguchi's affidavit is impermissible hearsay, and that Firestone's use of Bridgestone's trademark, and marketing, amount to Bridgestone doing business in Montana.  *Plaintiffs' Reply (Court's Doc. No. 41) at 1-5.*  Additionally, Bridgestone did not challenge Joss's motion to strike with respect to paragraphs 5, 14, and 15, thus, the Court should strike these

paragraphs.  *Id. at 5-6.*

## III.   DISCUSSION

### A.   Motion to Strike

The Court will deny Joss's motion to strike portions of the Hashiguchi affidavit.  Though paragraph 10 of the affidavit states it is based on "best knowledge," in paragraph 2 the affidavit recites that Hashiguchi has "personal knowledge of the facts stated in this affidavit and they are true and correct." Thus, although the Court is uncertain why the affidavit added the "best knowledge" statement in paragraph 10, it is clear that Hashiguchi has sworn that he has personal knowledge of all the facts in the affidavit, including paragraph 10 thereof.[2]

The case cited by Joss, Quaranta v. Management Support, 255 F.Supp.2d 1040, 1050 (D. Ariz. 2003) dealt with testimony admittedly not based on personal knowledge and does not provide support for striking a paragraph with a separate "best knowledge" statement within an affidavit sworn in its entirety on personal knowledge.  In any event, where assertions in the affidavit are controverted by Plaintiffs' factual showing, the Court is required to resolve factual disputes in

---

[2]It this was not Hachiguchi's intent, Bridgestone must immediately file a corrected affidavit.

Plaintiffs' favor.  See Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007).

### B.    Motion to Dismiss

Personal jurisdiction analysis involves two parts.  First, the exercise of personal jurisdiction over a non-resident defendant must comport with the forum state's long-arm statute.  See Omeluk v. Langsten Slip and Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995) (citing Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994)).  Second, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice embodied in the due process clause.  Schwarzenegger v. Fred Martin Motor Company, 374 F.3d 797, 800-01 (9th Cir. 2004).

The plaintiffs bear the burden of demonstrating that the Court's exercise of personal jurisdiction over Bridgestone is appropriate.  Schwarzenegger, 374 F.2d at 800-801; Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 912 (9th Cir. 1990) ("Portage").  Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.  Schwarzenegger, 374 F.3d at 800 (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)).

Where no applicable federal statute governs personal jurisdiction, the district court applies the law of the state in which the district court sits.

<u>Schwarzenegger</u>, 374 F.3d at 800.  Here, no federal statute or rule establishes a basis for the exercise of personal jurisdiction.  Thus, personal jurisdiction in this case is governed, initially, by Montana's long-arm statute.

## **1.**      **Personal Jurisdiction Under Montana's Long Arm Statute**

Montana's long-arm statute is found in Rule 4(B)(1) of the Montana Rules of Civil Procedure, which provides:

> B. Jurisdiction of Persons.
> (1) Subject to Jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>> (a) the transaction of any business within this state;
>> (b) the commission of any act which results in accrual within this state of a tort action;
>> (c) the ownership, use or possession of any property, or of any interest therein, situated within this state;
>> (d) contracting to insure any person, property or risk located within this state at the time of contracting;
>> (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
>> (f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

This rule governs principles of both general and specific jurisdiction.

The first inquiry under this rule is whether a defendant is "found within Montana" as provided in Rule 4(B)(1)'s first sentence.  Cimmaron Corporation v. Smith, 2003 MT 73, ¶ 12, 315 Mont. 1, ¶ 12, 67 P.3d 258, ¶ 12.  The Montana Supreme Court has stated:

> A party is "found within" the state if he or she is physically present in the state or if his or her contacts with the state are so pervasive that he or she may be deemed to be physically present there.  A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum.

Bi-Lo Foods, Inc. v. Alpine Bank, 955 P.2d 154, 157 (Mont. 1998) (citing Lurie v. 8182 Maryland Associates, 938 P.2d 676, 678 (Mont. 1997)(quoting Simmons Oil Corp. v. Holly Corp., 796 P.2d 189, 194 (Mont. 1990)); see also Threlkeld v. Colorado, 16 P.3d 359, 361 (Mont. 2000).

The Court will assume, for purposes of the discussion below, that Bridgestone is not subject to general personal jurisdiction under Montana's long-arm statute.  Thus the Court proceeds to the question of whether there is specific

jurisdiction over Bridgestone.[3]

Specific jurisdiction may lie, even if the nonresident defendant maintains minimal contacts with the forum, provided that the plaintiff's cause of action arises from any of the six enumerated activities of Rule 4(B)(1)(a) through (f), and the exercise of jurisdiction does not offend due process.  Bi-Lo Foods, 955 P.2d at 157.

Here, the Court concludes that Bridgestone allegedly commissioned an act which caused a tort to accrue in Montana, thus satisfying Rule 4(B)(1)(b).  This Court has recognized that when a manufacturing or design defect occurring outside Montana causes an accident in Montana, with resulting injuries, the tort accrued in Montana.  Scanlan v. Norma Projektil Fabrik, 345 F.Supp. 292, 293 (D.Mont. 1972) ("It is now settled that a tort action may accrue in a state wherein the injury occurs and consequently there is jurisdiction here if defendant's acts satisfy the minimum contacts requirement."); see also Jackson v. Kroll,

_____

[3]The Court need not reach Joss and Barber's arguments supporting general personal jurisdiction over Bridgestone, which primarily rely upon imputing to Bridgestone  Firestone's contacts with Montana under the "single business enterprise" analysis.  The Court notes, however, that the decision in Bridgestone Corp. v. Lopez, 131 S.W.3d 670 (2004), was vacated not on its merits but because the parties had reached a settlement.  Bridgestone Corp. v. Lopez, 2005 WL 977562.  The Court of Appeals of Texas denied the parties' joint motion to withdraw the April 1, 2004, opinion.  Id.

<u>Pomerantz and Cameron</u>, 223 Mont. 161, 166, 724 P.2d 717, 721 (1986)("Under Montana law, the act causing the injury ... need not occur in Montana as long as the tort accrues here.").[4]  In the context of venue, the Montana Supreme Court has stated:

> [T]he tort of wrongful death cannot "arise," "accrue" or be "committed" until the critical and defining element of this claim – death – occurs.  The location where death occurs is determinative for venue purposes of where the tort of wrongful death ... "accrues"[.]  In this case, it is undisputed that Gerald died in Yellowstone County. Accordingly, it is equally clear that the tort of wrongful death for which Jean has filed suit ... accrued and was committed in that County.

<u>Wentz v. Montana Power Co.</u>, 280 Mont. 14, 19, 928 P.2d 237, 240 (1996).

Bridgestone's reliance on <u>Cimmaron Corp.</u> is misplaced.  In that case, the Montana Supreme Court held that the tort of conversion did not accrue in Montana when the actions of the defendants giving rise to the claim, alleged misappropriation of accounts receivable, occurred in Pennsylvania.  <u>Cimmaron</u>

---

[4]Bridgestone correctly points out that a recent Montana state district court decision has opined that the due process analysis in <u>Scanlan</u> is dated.  <u>See</u> <u>Bunch v. Lancair Int'l, Inc.</u>, 2006 WL 242367, *13-14 (Mont. Dist.)  But the <u>Bunch</u> opinion did not question the tort accrual holding in <u>Scanlan</u>, and in fact held that, in a products liability case against a foreign defendant aircraft engine manufacturer where an airplane crashed in Montana, the tort accrued in Montana and that Rule 4(B)(1)(b) was thus satisfied.  <u>Id.</u> *8.

<u>Corp.</u>, ¶ 20.  The plaintiff's argument, rejected by the Supreme Court, was that the tort accrued in Montana because plaintiff felt its effects in Montana.  <u>Id.</u> ¶ 17.

The situation in <u>Cimmaron Corp.</u> is plainly not analogous to a products liability action where the allegedly defective product fails in Montana, causing bodily injury in Montana.   If Bridgestone is correct, and this tort did not accrue in Montana when its tire allegedly failed here, the only remaining possibilities are that the tort accrued in Japan when Bridgestone manufactured the tire in question, years before the injury, or that the tort accrued in Japan at the time the tire was sold.  Neither result is legally supportable.

Like <u>Cimmaron Corp.</u>, the Montana state district court cases cited by Bridgestone did not involve physical injuries occurring in Montana.  <u>See</u> <u>Threlkeld v. Thompson</u>, 2004 Mont. Dist. LEXIS 3247, *23-24 (plaintiffs sued over alleged misrepresentations made in out-of-state horse purchase); <u>Daly v. Delta Air Lines, Inc.</u>, 2004 Mont. Dist. LEXIS 2252, *27-30 (holding that the tort accrued in Utah where plaintiff sued over physical injuries sustained in incident at Salt Lake City International Airport); <u>Mountain West Bank, N.A. v. Oden</u>, 2003 Mont. Dist. LEXIS 3367 ( plaintiff sued over allegedly negligent out-of-state payment on check by defendant without plaintiff's endorsement).  Bridgestone has not cited a single factually analogous case reaching the accrual conclusion it

-18-

urges.  The only physical injury case, Daly, supports this Court's conclusion.

In contrast, a more recent district court opinion by Judge Salvagni, who authored the Threlkeld district court opinion above, found that Rule 4(B)(1)(b) was satisfied in the context of a product liability action where the allegedly defective product caused an accident and resulting injuries in Montana.  See n. 4, supra.

Finally, Cimarron Corp. is not inconsistent with Scanlan, Jackson, or this Court's conclusion here.  All cases found that the tort accrued where the injury occurred.  In Cimmaron Corp., the injury occurred in Pennsylvania where the tortious act occurred and the accounts receivable were located.  In Scanlan, Jackson, and here, the injury occurred in Montana.  Bridgestone's claim that any tortious act by it must also have been committed in Montana is, in this context, an attempt to add a requirement simply not present in Rule 4(B)(1)(b).  Specific personal jurisdiction over Bridgestone exists pursuant to Montana's long-arm statute.

## 2.    Due Process

The Court next must determine whether personal jurisdiction over Bridgestone is consistent with due process.  Due process requires that the nonresident defendant have certain minimum contacts with the forum state such

that the exercise of personal jurisdiction does not offend traditional notions of fair

play and substantial justice.  International Shoe v. Washington, 326 U.S. 310, 316

(1945).

To exercise specific jurisdiction, which subjects a defendant to claims that

arise out of or are related to the defendant's contacts with the forum, Helicopteros

Nationales de Columbia v. Hall, 466 U.S. 408, 414 n.8 (1984), the court must find

that the defendant had "fair warning that a particular activity may subject [them]

to the jurisdiction of a foreign sovereign."  Burger King Corp. v. Rudzewicz, 471

U.S. 462, 472 (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977)(Stevens, J.,

concurring in judgment)).  Such "'fair warning' is satisfied if the defendant has

'purposefully directed' his activities at residents of the forum, and the litigation

results from alleged injuries that 'arise out of or relate to' those activities."  Id.

(citations omitted).

The Ninth Circuit employs a three-part test to determine whether Burger

King's requirements are satisfied with respect to a particular defendant:

> (1) The nonresident defendant must do some act or
> consummate some transaction with the forum or perform
> some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby
> invoking the benefits and protections of its laws[;] (2)
> [t]he claim must be one which arises out of or results
> from the defendant's forum-related activities[; and] (3)
> [e]xercise of jurisdiction must be reasonable.

<u>Omeluk</u>, 52 F.3d at 270 (citing <u>Data Disc, Inc. v. Systems Tech. Assoc., Inc.</u>, 557
F.2d 1280, 1287 (9th Cir. 1977) and <u>Roth v. Garcia Marquez</u>, 942 F.2d 617,
620-21 (9th Cir. 1991)).

   The "purposeful availment," "arising out of forum-related activities"
and "reasonableness" criteria provide the analytical framework that courts in the
Ninth Circuit employ when considering whether the "constitutional touchstone"
of "minimum contacts" necessary for due process is satisfied.  <u>Omeluk</u>, 52 F.3d at
270 (citing <u>Burger King</u>, 471 U.S. at 474).  "If any of the three requirements is
not satisfied, jurisdiction in the forum would deprive the defendant of due process
of law."  <u>Id.</u>

### 1. **Purposeful Direction**

  Joss and Barber must show that Bridgestone purposely availed itself of the
privilege of conducting activities in Montana, or that it purposefully directed its
activities at Montana.  <u>Schwarzenegger</u>, 374 F.3d at 802.  Purposeful availment
and purposeful direction are actually distinct concepts; purposeful availment is
most often analyzed in cases sounding in contract, purposeful direction in cases
sounding in tort.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Goldberg v. Cameron</u>, 482 F.Supp.2d 1136, 1144
(N.D.Cal. 2007); <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 361 F.Supp.2d

1135, 1140 (N.D.Cal. 2005).  "A showing that a defendant purposefully directed

his conduct toward a forum state ... usually consists of evidence of the

defendant's actions outside the forum state that are directed at the forum, such as

the distribution in the forum state of goods originating elsewhere."

Schwarzenegger, 374 F.3d at 803; see also World-Wide Volkwagen, 444 U.S. at

297-98 ("forum State does not exceed its powers under the Due Process Clause if

it asserts personal jurisdiction over a corporation that delivers its products into the

stream of commerce with the expectation that they will be purchased by

consumers in the forum State.").

    The Court will employ a purposeful direction analysis here because the

case sounds in tort and because Plaintiffs' evidence suggests that this is a "stream

of commerce" case.[5]  "The placement of a product into the stream of commerce,

without more, is not an act purposefully directed toward a forum state."  Holland

America v. Wartsila North America, Inc., 485 F.3d 450, 459 (9th Cir. 2007)

(citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987).

Likewise, a defendant's awareness that a product may be swept into a forum state

_____

    [5]Thus, the Court does not analyze purposeful direction under the three part
"effects test" based on Calder v. Jones, 465 U.S. 783 (1984) and utilized in
Schwarzenegger.  It is "well established" that the effects test applies only to
intentional torts.  Holland America v. Wartsila North America, Inc., 485 F.3d 450,
460 (9th Cir. 2007).

in the stream of commerce is not "an act purposefully directed toward the forum state."  Id.

In Holland America, the Ninth Circuit found that the defendant had not committed an act purposefully directed at Washington state where the defendant's contacts were limited to a passive website, occasional visits to the United States by a marketing representative, and a single advertisement not directed at Washington.  Id. at 460.

The critical question is whether Bridgestone did something more than merely place its tires in the stream of commerce.  The Court concludes that it did. Bridgestone is not merely aware that its tires may be swept into Montana. Bridgestone has stated that its intent is "to become a truly global enterprise and to establish the Bridgestone brand as the undisputed world No. 1 brand in both name and substance."  *Court's Doc. 31, Plaintiff's Exhibit 11 at 2.*  Bridgestone proclaims that is "the true industry leader in the Americas" with a 20 percent market share in North America.  It has a goal of being number 1, or at least number 2, in every major tire market.  It notes that its multibrand strategy has produced strong sales growth in North America.  In 1998, the Americas accounted for 31.1 percent of Bridgestone's operating profit.  *See infra pp. 5-7.* In 2008, it issued a media release touting its management goal of establishing its

status "of being the undisputed world No. 1 tire and rubber company in both name and reality."

Consistent with Bridgestone's intent and design, its tires are widely sold and advertized in Montana. *See Court's Doc. No. 31, Exhs. 1-6 (yellow pages ads), verified by Baker Aff., Court's Doc. No. 32, ¶¶ 2-8.* It is clear that Bridgestone is not a passive bystander merely aware that its tires may be used in Montana. Bridgestone cannot reap the rewards of its "strategy" "produc[ing] strong sales growth in North America," including Montana, without being subjected to the responsibilities accompanying such success. See Nat. Union Fire Ins. Co.of Pittsburgh, PA v. Aerohawk Aviation, Inc., 2005 WL 1505787 (motion to dismiss denied where defendant "reaps the financial benefits from [co-defendant's] national presence, but seeks to evade the responsibilities that accompany that national presence").

The Supreme Court's analysis in World-Wide Volkwagen is instructive here. World-Wide Volkwagen presented a case with facts similar to those under review here – a products liability suit in which the automobile accident occurred in Oklahoma but the automobile was not sold in Oklahoma and the plaintiffs did not reside there. 444 U.S. at 288-89. The named defendants were the foreign automobile manufacturer (Audi), the importer (Volkswagen of America, Inc.), the

regional distributor and the retail dealer.  Interestingly, the foreign manufacturer did not challenge the jurisdiction of the Oklahoma court.[6]  It was the distributor (who operated in New York, New Jersey and Connecticut) and the New York dealer which challenged the jurisdiction of the Oklahoma court.  In ruling that the Oklahoma court did not have jurisdiction over the distributor and dealer, the Court implicitly distinguished them from the situation of a manufacturer whose products are sold nationwide:

> They close no sales and perform no services there.  They avail themselves of none of the privileges and benefits of Oklahoma law.  They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State.  Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.
>
> * * * *
>
> Hence, if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.  The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

---

[6]Volkswagen did enter a special appearance in the District Court but did not seek review in the Supreme Court of Oklahoma and was not a petitioner in the United States Supreme Court.  444 U.S. at 288 n. 3.

444 U.S. at 295, 297-98.  This language was quoted with approval by the Court in Asahi, 480 U.S. at 110.  In Asahi, the Court noted that the required "something more" than merely placing a product into the stream of commerce could be satisfied by a showing that the defendant "market[ed] the product through a distributor who has agreed to serve as the sales agent in the forum State."  Id. at 112.

The Court finds that Bridgestone has delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in Montana, and that it has purposely directed its activities at this forum.  It has made efforts to serve, directly or indirectly, the Montana market for tires. Accordingly, plaintiffs have carried their burden of producing evidence to support a prima facie case for personal jurisdiction as to this prong of the test.  To the extent the facts noted above are in dispute with the Hashiguchi affidavit, those disputes are resolved in plaintiffs' favor.  Menken, 503 F.3d at 1056.

The Court recognizes that many lower courts have considered  whether Bridgestone is subject to personal jurisdiction, reaching various conclusions as the facts of those cases dictated.   Under the facts of this case, the Court concludes that those decisions finding jurisdiction over Bridgestone are the more persuasive.

## 2.    Arising Out Of

The second prong of the due process test is satisfied if "the litigation results from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum. Here, Bridgestone's delivery of tires, directly or indirectly, into the stream of commerce with the intent and expectation that they would be purchased and used in Montana clearly "relates to" an accident involving one of its tires manufactured in Japan. Thus, the second prong is satisfied. see also Hawaii Forest & Trail, Ltd v. Davey, 556 F.Supp.2d 1162, 1170-71 (D.Ha. 2008)(finding jurisdiction where the defendant "not only expected, but knew that its product would end up in Hawaii").

### 3.    Reasonableness

Because plaintiffs have satisfied the first two prongs of the test , personal jurisdiction is presumed reasonable unless Bridgestone can present a compelling case to the contrary. Ochoa v. J.B. Martin & Sons Farms., Inc., 287 F.3d 1182, 1192 (9th Cir. 2002). In considering the third prong of this test, *i.e.*, reasonableness of the exercise of jurisdiction, courts in the Ninth Circuit are to apply the following seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial

resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).  The Court considers the seven factors in turn.

First, the extent of purposeful interjection into Montana narrowly favors plaintiffs.  Though the Court has found sufficient interjection into Montana to constitute purposeful direction or availment, "the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction[.]"  Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993).  Bridgestone has no employees, facilities, or agents for service of process in Montana.  Bridgestone tires are, however, widely available in Montana and the evidence indicates Bridgestone intends for this to be the case and knows it to be so.  Bridgestone's indirect purposeful interjection marginally weighs in favor of jurisdiction.

Second, the burden on Bridgestone of defending in Montana is not great.  The materials submitted by the  parties indicate that Bridgestone has defended many cases throughout the United States.  Bridgestone has the resources, counsel, expertise and experience with the American justice system, to defend this case without undue burden.

Third, although that court is mindful of the "unique burdens placed upon

one who must defend oneself in a foreign legal system" (<u>Asahi</u>, 480 U.S. at 114),
the extent of conflict with Japan's sovereignty is minimal because the events
giving rise to this litigation occurred in Montana and thus Montana law properly
applies.  <u>See</u> <u>Robinson Corp. v. Auto-Owners Ins. Co.</u>, 304 F.Supp.2d 1232, 1241
(D.Haw. 2003)(finding burden on insurer was minimal where insurer "promised
to defend its policyholders ... within its policy territory, which included the entire
United States").

Fourth, Montana's interest in the dispute favors personal jurisdiction,
although not as strongly as if the plaintiffs were Montana residents.  Montana has
an interest in this matter, however,  because the accident occurred in Montana.
And, although no Montana residents were injured in this accident,  Montana has
an interest in the safety of automobiles using Montana roadways.  *See* <u>Phillips v.
General Motors Corp.</u>, 2000 MT 55, ¶ 52, 298 Mont. 438, ¶ 52, 995 P.2d 1002, ¶
52.

The fifth factor, efficient judicial resolution, favors personal jurisdiction.
Here, the focus is on the location of witnesses and evidence.  <u>See</u> <u>Robinson Corp.</u>,
304 F.Supp.2d at 1241.  The accident occurred in Montana and Montana is the
most likely location for non-party witnesses.  Although the Plaintiffs are not
Montana residents, Montana is a nearer location for these parties, and presumably

more convenient, than Japan.   Accordingly, Montana is likely the most efficient

forum in which to resolve this dispute.

The sixth factor does not weigh in favor of personal jurisdiction, as the

plaintiffs and intervening plaintiffs are not Montana residents,.

As to the seventh factor, the plaintiffs and intervening plaintiffs bear the

burden of alleging the unavailability of an alternative forum and have not done

so.  See Core-Vent Corp., 11 F.3d at 1490.  Thus, this factor weighs against

personal jurisdiction.

Balancing the above factors, the Court concludes that Bridgestone does not

present a compelling case that the exercise of personal jurisdiction over it in

Montana is unreasonable.

## IV.    CONCLUSION

Based on the foregoing,

IT IS ORDERED that Joss's motion to strike (*Court's Doc. No. 33*) is

DENIED.

IT IS RECOMMENDED that Bridgestone's motion to dismiss (*Court's

Doc. No. 27*) be DENIED.  The Clerk of Court shall serve a copy of this Findings

and Recommendation upon the parties.  All parties are advised that, pursuant to

28 U.S.C. § 636(b)(1), any objections to the Findings and Recommendation must

be filed with the Clerk of Court within ten (10) days after receipt hereof, or

objection is waived.

DATED this 14th day of January, 2009.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
U.S. Magistrate Judge